# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| JASON L. SHEPPARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:14CV1669-PPS |
| | ) | |
| OFFICERS DARCY MEADE, SHAUN | ) | |
| MUDD, C. SUMMERS, T. ROCKEY, | ) | |
| F. COURT, T. NICHOL, J. WINTERS, | ) | |
| C. MARSH, J. JONES, D. SHINGLE, | ) | |
| J. ZIMMER, E. KEELE, D. MEZA, | ) | |
| SERGEANT CORY FIELDS, NURSE | ) | |
| JAYNN STOOPS, OFFICER M. | ) | |
| HOLDERMAN, DOCTOR COLLIER | ) | |
| and DOCTOR AL SHANI, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Jason Sheppard filed this suit against 16 officers and employees of the Kosciusko County Jail, and two doctors who were not county employees, alleging that his Eighth Amendment rights were violated by their deliberate indifference to his serious medical needs while he was in custody there. Sheppard has acknowledged on the record that he intends to pursue his claims against only six of the defendants – Officers Meade, Mudd, Summers, and Marsh, Sergeant Fields, and Nurse Stoops. [DE 91 at 1.] Now before me is a fully-briefed motion for summary judgment by the Kosciusko County defendants.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

## FACTS

Sheppard was at the jail for two separate stretches of time – roughly five months from late June to early December in 2012, and then again for approximately two months from late November 2013 until the end of January 2014. Sheppard's evidence supports his assertion that in October 2012 when he began to experience severe pain in connection with bloody bowel movements, he complained to jail officers verbally and/or in writing each time it occurred, several times each week, including specifically to defendant Meade. [DE 91-1 at ¶¶3-4.] Sheppard attests that his abdominal pain was severe enough to double him over and lasted at least two hours. [*Id.* at ¶3.] Sheppard says that Meade examined his rectal area and told him "it appeared swollen but was fine." [*Id.*] Sheppard claims that although he continued to make complaints to Meade "at least 5 or six times," he was not seen by a nurse until November 16, 2012. [*Id.*] On that day, November 16, 2012, Sheppard was evaluated by defendant Jaynn Stroop, a

2

nurse, who directed him to use hemorrhoid cream, and set up a doctor's appointment for Sheppard. [DE 83-1 at 4.]

It was obvious that Sheppard had a severe problem because on November 20, a medical progress note indicates that Sheppard was seen by a doctor (with an illegible signature), who noted a rectal prolapse. [DE 83-1 at 5.] The doctor said that Sheppard should be sent for a general surgery consult and that time was of the essence; the doctor said it should be scheduled "ASAP." [*Id*.] Sheppard was prescribed Miralax and Metamucil for constipation. [*Id*.]

Sheppard's medical problem was so acute that he was actually released from the jail on December 3 on a personal recognizance bond. The very next day he went to a doctor's appointment jail personnel had made for him with Dr. Funil Ramrakhiani. [*Id*. at 21-22.] Dr. Ramrakhiani ordered upper and lower GI testing, and diagnosed Sheppard as having polyps and severe hemorrhoids. [*Id*. at 23.] Sheppard visited Dr. Ramrakhiani about six times. [*Id*. at 24.] Sheppard complained in his deposition testimony that none of doctors he's seen over three years have "told [him] anything," but just keep giving him creams and laxatives while he continues to bleed. [*Id*.] Sheppard has testified that a nurse on Dr. Ramrakhiani's staff discussed with him a possible surgical procedure to address his bowel issues. [*Id*. at 25.]

When Sheppard returned to the Kosciusko County jail in November 2013, the medical screening report dated November 26 reflected that he was then undergoing treatment for hemorrhoids, for which he'd had a recent hospitalization. [DE 83-1 at 6.]

Sheppard reported experiencing rectal bleeding at that time. [DE 83-1 at 7.] In his affidavit, Sheppard attests that his report of a recent hospitalization referred to the upper GI procedure ordered by Dr. Ramrakhiani. [DE 91-1 at ¶19.] Sheppard was housed in the medical section throughout the approximately two months of his second period of incarceration at the jail. [DE 83-1 at 28.]

Sheppard attests that in December 2013 he told defendant Meade about his continued severe pain and rectal bleeding "on multiple occasions," but that Meade did not let him see a nurse or doctor, and he did not see the nurse until later that month. [DE 91-1 at ¶10.] Sheppard's affidavit recounts an incident in December 2013 when his bleeding ran down both legs and pooled on the floor. [*Id*. at ¶11.] Sheppard attests that defendant Fields came to the cell and screamed at him, saying that "they weren't going to release me from the jail to get medical treatment and that I should just stop what he called 'the bull-shit,'" and that "it was my fault I was bleeding and in pain because I had not gotten my condition fixed while I was still outside the jail." [*Id*.]

On December 10, 2013, Sheppard initiated a Sick Call Request to be seen by a nurse for rectal bleeding. [*Id*. at 9.] A rectal bleeding protocol questionnaire was completed on December 24, 2013, reflecting that examination revealed "massive hemorrhoids" and that Sheppard had "bloody tissue stuffed in anus." [*Id*. at 10.] The questionnaire was signed by defendant Mudd and reviewed by a physician whose signature is illegible. [*Id*. at 11.]

4

The same day, Nurse Stoops signed a medical progress note reporting that Sheppard "did not have upper GI as doctor requested," because "[h]e doesn't have insurance" and is not working. [DE 83-1 at 12.] Stoop noted "[h]e can't have anything done on outside of jail." [*Id.*] Sheppard's deposition testimony suggests he had the upper GI test, and instead it was a possible surgical procedure that he did not undergo, because his lack of money and insurance prevented him from getting all the necessary testing "to determine if [he] was appropriate for that procedure." [DE 91-1 at ¶7.] Sheppard's affidavit addresses this as well, with Sheppard explaining that he "did not tell her that I failed to get an 'upper GI,'" but "did tell her that [I] did not have insurance or enough money to get my condition fixed during my release from the jail." [DE 91-1 at ¶12.] Stoop's treatment plan advised Sheppard to "keep medical aware of his condition," to use "warm moist cloths to rectum area," "avoid straining during bowel movements," and "keep anal area clean and dry." [DE 83-1 at 12.]

In support of his summary judgment opposition, Sheppard submits and expressly agrees to the accuracy of the jail's Medication Administration Record. [DE 91-1 at ¶24.] That record reflects that he was given Miralax and Metamucil daily from November 21 through 29 and December 1 and 2, 2012, and was also given Colace[1] and hemorrhoid cream. [DE 91-5.] Sheppard was seen by a physician on December 26, 2013, whose notes indicate that Sheppard had stopped his medication. [DE 83-1 at 13.] This appears to be further explained in a medical progress note dated December 28, in

---

[1] Colace is a common stool softener laxative.

which Nurse Stoops noted that Sheppard "felt that the colace was too strong." [*Id*. at 14.] Sheppard reported diarrhea-like stools. [*Id*.] Stoops explained that Sheppard could reduce his dose from "1 tab of the colace instead of 2," but reports "he refuses." [*Id*.] Stoops listed three other treatment recommendations: to increase fluids, to eat soft foods or chew food well, and to report to the medical department. [*Id*.]

Sheppard's affidavit describes his complaints on or around January 6, 2014 to defendants Rockey and Court about severe pain and bleeding, but that he was not seen by medical personnel that day. [DE 91-1 at ¶15.] In his affidavit, Sheppard attests that during his second incarceration he was never "provided with medication that helped with my severe pain or bleeding," and that none of the steps he was advised to take provided relief from either of those symptoms. [*Id*. at ¶16.] On approximately January 21, 2014, Sheppard was transferred to the Indiana Department of Correction. [*Id*. at ¶2.]

## ANALYSIS

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "Correctional officials have long been warned that they cannot ignore an inmate's known serious medical condition." *Orlowski v. Milwaukee County*, 872 F.3d 417, 422 (7th Cir. 2017). The Kosciusko County defendants do not dispute that Sheppard's regular and persistent rectal bleeding and pain constituted a serious medical need. [DE 93 at 4.] This concession is appropriate, because "[a] medical condition need not be life-threatening to

6

be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999)).

The seriousness of Sheppard's medical condition is plainly suggested by the jail doctor's conclusion on November 20, 2012 that an urgent surgical consult was needed. [DE 83-1 at 5.] And even where defendants are not medical professionals, their observations may nonetheless disclose a condition that is "so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton*, 593 F.3d at 620 (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)) (internal quotation marks omitted).

Sheppard's claims are pursued against the six individual defendants in their individual capacities. [DE 59 at ¶2.] "[I]n order to hold an individual defendant liable under §1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017). The defendants' generalized argument for summary judgment fails to address Sheppard's theory of relief as against particular defendants. In his affidavit, Sheppard contends that when his problems started in October 2012, he complained to "the jail officers," identifying Meade in particular by name. [DE 91-1 at ¶4.] During his later period of incarceration at the jail, when his bleeding was even more severe, he complained to jail staff including Meade, Mudd and Fields [DE 91-1 at

¶¶9-11.][2]  As for Nurse Stoops, Sheppard attests that he repeatedly complained to her about the severity of his pain and the ineffectiveness of the treatment measures he'd been afforded, but he was never sent to the hospital nor "ever provided medication that helped with [his] severe pain or bleeding" or with materials to clean himself.  [DE 91-1 at ¶16.]

Analyzing the record as to Sheppard's particular theories for various defendants' liability, I find that there is substantial agreement about the medical treatment Sheppard received, but that there are genuine disputes of material fact about what did *not* occur that the Eight Amendment may have required.  The first of these issues is the timeliness of treatment based on Sheppard's complaints to the jail officers. "Intentional delays in medical care may constitute deliberate indifference, even if the inmate's medical condition is non-life threatening."  *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017).

The defendants don't dispute Sheppard's claims about the frequency of his complaints and the severity of the pain he complained about, but no explanation is offered, much less an undisputed one, for the delay in treatment between his complaints beginning in mid-October 2012 and his (apparently first) visit with Nurse Stoops on November 16, 2012.  Then upon his return to the jail on November 26, 2013, Sheppard's history of hemorrhoids and current rectal bleeding were noted on an intake

---

[2] Particular allegations concerning defendant Marsh are not specifically made by either party in connection with the motion for summary judgment.  In the absence of a showing of meritorious undisputed fact by either side, summary judgment will not be granted to defendant Marsh.

8

screening report. [DE 83-1 at 6-7.] Sheppard attests that in December 2013 he also reported incidents of severe pain and bleeding to jail staff including defendants Meade, Mudd and Fields, but the movants' records don't show a visit to medical personnel until December 24, after Sheppard's request for a sick call on December 10. [DE 91-1 at ¶9; DE 83-1 at ¶¶9-12.] "A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain," and "even brief, unexplained delays in treatment may constitute deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

The argument portion of the Kosciusko County defendants' brief suffers from a lack of citations to the record, particularly where it asserts facts not addressed in its "Undisputed Factual Matters." For instance, the defendants claim that it is undisputed that the jail records "denote that [Sheppard] made a number of requests for medical treatment regarding his hemorrhoids" and that "[e]ach of these requests was responded to by jail personnel." [DE 82 at 8.] Their documentary evidence does not support these claims, and Sheppard's affidavit and deposition testimony contradict them. In addition, the Kosciusko County defendants have not expressly claimed that the few sick call requests they have submitted constitute *all* the requests Sheppard made for medical attention. Sheppard points out that the sick call request forms submitted by the defendants are computer-generated, not completed personally by Sheppard, and that they do not contain "all of the information I reported about my symptoms, such as information about my pain or its level." [DE 91-1 at ¶18.]

Concerning responsibility for delays in treatment, the record also contains no evidence explaining how inmate requests for medical treatment were handled or scheduled. No conclusions can be drawn as to whether the officers to whom Sheppard complained were responsible, or whether Nurse Stoops or other medical personnel were responsible for delays in treatment.

Another issue precluding summary judgment in favor of the defendants concerns whether defendants exhibited deliberate indifference to Sheppard's complaints of severe pain. Surprisingly, the Defendants offer *no evidence* – such as an affidavit or deposition testimony from Nurse Stoops or any other medical authority – to explain why Sheppard's complaints of severe pain were not addressed or why the medical treatment he was offered was an adequate response to those complaints. Indeed, the defendants have offered no affidavits or deposition testimony from *any* of the defendants on any issue. Failing to provide any evidence from one's own client isn't usually a good recipe for getting summary judgment. In all events, unnecessarily prolonging an inmate's pain may show deliberate indifference. *Perez*, 792 F.3d at 777-78.

The jail personnel repeatedly invoke case law from the Circuit about non-medical defendants relying on determinations by medical professionals. [DE 82 at 7; DE 93 at 3.] But this principle is of no help to them, because their argument for summary judgment is not specific for each defendant and does not suggest how (or support with evidence

that) any jail officer relied on any medical professional's determination at any particular point in Sheppard's time at Kosciusko County Jail. [DE 82 at 7; DE 93 at 3.]

## CONCLUSION

The Kosciusko County defendants have failed to demonstrate that they are entitled to judgment as a matter of law on Jason Sheppard's Eighth Amendment claims. Disputed questions of material fact exist concerning whether delay in medical treatment for Sheppard's complaints of severe pain and rectal bleeding, and the failure to address his complaints of severe pain in particular, constituted deliberate indifference to his serious medical needs.

**ACCORDINGLY:**

The Kosciusko County defendants' motion for summary judgment [DE 81] is DENIED.

**SO ORDERED**.

ENTERED: February 20, 2018.

/s/ Philip P. Simon
United States District Judge